**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL D. WRIGHT, | ) | CASE NO. 4:12 CV 372 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| MARY LAPUSHANSKY, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

*Pro se* Plaintiff Michael D. Wright filed this action under 42 U.S.C. § 1983 against Ohio
State Penitentiary ("OSP") Nurse Mary Lapushansky, OSP Physician Dr. Escobar, former OSP
Health Care Administrator Ms. Y. Thornton, OSP Nurse A.J. Gerlick, OSP Nurse Ms. Belfast, Ohio
Department of Rehabilitation and Correction ("ODRC") Assistant Chief Inspector Mona Parks, and
OSP Institutional Inspector Mark Thomas.  In the Complaint, Plaintiff alleges he did not receive
adequate treatment for back pain.  He seeks monetary damages and injunctive relief.

## I.      Background

Plaintiff alleges he sustained shoulder and back injuries.  He indicates he injured his back
while "working out" in the summer of 2009.  He does not allege what treatment he received, but
concludes it was inadequate.  He filed an Informal Complaint Resolution form with Ms. Thornton
on June 29, 2009, indicating he was still having back problems.  An x-ray of his back was
apparently taken some time prior to the filing of the grievance because Plaintiff claims he was told

by Dr. Escobar that "the specialist said [he had] a disc that was thinning." (Doc. 1 at 2). He contends he was told this is considered normal.

Plaintiff states that additional x-rays were taken of his back on January 29, 2010. These were also negative. Plaintiff contends that although Dr. Escobar concluded he did not have a pinched nerve, "Plaintiff finds this to be highly untrue, given how no MRI was [ever] performed on Plaintiff's back." (Doc. 1 at 3.) He was given stretching exercises and told to take Motrin as needed.

By July 2010, Ms. Lapushansky had replaced Ms. Thornton as the Health Care Administrator at OSP. Plaintiff filed an Informal Complaint Resolution form with Ms. Lapushansky on July 26, 2010, stating that he had serious medical issues with his left shoulder, lower back and left knee. He disagreed with Dr. Escobar's diagnosis and concluded that the pain in his knee stemmed from a pinched nerve in his lower back. Ms. Lapushansky responded that she would put him on nurses sick call. He claims he was again "given the same run around by nurses and Dr. Escobar." (Doc. 1 at 3).

In October 2010, Plaintiff was seen by Dr. Escobar for pain in his shoulder. He requested to be sent to Corrections Medical Center for an MRI. He also filed an Informal Complaint Resolution form indicating his shoulder "muscles won't build up as they should" when he is exercising. (Doc. 1 at 3.) Dr. Escobar indicated Plaintiff had arthritis in his shoulder, and prescribed exercises, Motrin, and a topical "muscle rubbing cream." (Doc. 1 at 3.) Nevertheless, Dr. Escobar scheduled Plaintiff for an MRI of the shoulder at the Corrections Medical Center on October 27, 2010. Plaintiff claims the MRI revealed no fluid in the shoulder joint, and normal alignment. He indicates the report found a mild deformity probably due to past dislocations;

2

however, his tendons were intact. Plaintiff states an abnormal signal[1] was noted in the superspinatus tendon.[2] The Corrections Medical Center physician interpreting the results concluded that Plaintiff had tendonopathy in his shoulder.[3] He states without explanation that even with the MRI, he was denied proper medical care.

Plaintiff contends he "worked out" on December 12, 2011. The next day, his back began cramping and he found it difficult to stand up. He contends Nurse Belfast indicated that he was only interested in obtaining more pills, and told staff he was exaggerating his symptoms. He was given an x-ray of his back which he claims revealed moderate disc narrowing. He remained in the prison infirmary for a few hours until the cramping ceased. He told the health care providers that he believed the pain was caused by sciatica. He was told there was no indication in his file that he had sciatica or that he suffered from numbness in his legs and toes. Plaintiff believes medical personnel are editing his records. He contends Dr. Escobar would not order another MRI, stating "Columbus" would not believe Plaintiff was injured because he continued to work out all of the time. Plaintiff does not see the correlation and contends this was a denial of medical care.

Plaintiff alleges he had another appointment with Dr. Escobar on January 13, 2012. Nurse Gerlick was present at this visit. Dr. Escobar advised Plaintiff to continue stretching exercises.

---

[1]  An MRI uses a strong magnet to produce an image of the joint. The image that the MRI creates looks black, white, and all shades of grey. This different shade is called "signal." High signal is a white appearing shade, and low signal is a dark shade. The radiologist and orthopedist use these signal characteristics to determine if the appearance is normal or abnormal. *See* http://orthopedics.about.com.

[2]  The supraspinatus tendon is a thick fibrous band of tissue that connects the supraspinatus muscle to the shoulder joint. The supraspinatus muscle is attached to the shoulder blade and aids in shoulder movement. *See* http://www.livestrong.com

[3]  Tendonopathy is an inflammation of the tendon, also known as tendinitis. *See* http://www.health.com

3

Plaintiff reiterated his belief that he suffers from sciatica, and was told nothing could be done to alleviate the symptoms.  He was told that surgery is not the answer because it would only cause additional problems.  Plaintiff asked if he was going to have these problems for the rest of his life and Dr. Escobar told him that was correct.  He asked if anything could be done to cure the problem and he was told nothing could be done.  Plaintiff claims he filed a complaint with the state medical board before this visit and believes he was denied medical care in retaliation for filing the complaint.  Plaintiff filed grievances as well.  All grievances were denied, finding that Plaintiff was given proper medical care.

Plaintiff asserts four claims for relief.  First, Plaintiff contends Dr. Escobar retaliated against him for filing a complaint with the state medical board.  Second, Plaintiff contends the Defendants denied him adequate medical care in violation of the Eighth Amendment.  Third, Plaintiff asserts the Defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment.  Finally, Plaintiff asserts an unspecified violation of the Fourteenth Amendment.  He seeks an injunction ordering the Defendants to immediately order an MRI of his back, provide him with pain medications, and give him an extra mattress.  He also seeks an award of compensatory and punitive damages.

## II.      Analysis

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which

4

relief can be granted, or if it lacks an arguable basis in law or fact.[4] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).

A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal* , 129 S.Ct. 1937, 1949 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998).

---

[4]    An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

A.  Retaliation

Plaintiff first asserts that Dr. Escobar retaliated against him.  Retaliation, though it is not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill an individual's exercise of First Amendment rights.  *Perry v. Sindermann*, 408 U.S. 593, 597 (1972).  To state a prima facie case for retaliation prohibited by the First Amendment, Plaintiff must establish: 1) he engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that a causal connection exists between the first two elements.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  Plaintiff fails to establish all of these criteria.

1.  *Protected Conduct*

The first element that Plaintiff must establish for his retaliation claim is that he was engaged in conduct protected by the First Amendment. *Id.* at 394–95. Plaintiff claims the doctor retaliated against him for filing a complaint with the state medical board.  Filing a grievance against prison officials is conduct protected by the First Amendment.  *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.2000).  Filing frivolous grievances, however, is not protected conduct.  *Hill*, 630 F.3d at 472.  Plaintiff does not provide many details about the medical care he was provided, or the contents of the complaint he filed against Dr. Escobar with the state medical board.  It is therefore difficult to determine if the medical board complaint was non-frivolous.  The Court will assume for purposes of this analysis that the filing of a complaint was conduct protected by the First Amendment.

2.  *Adverse Action*

The second element that Plaintiff must establish for his retaliation claim is that the

6

Defendants took an adverse action against him. *Thaddeus–X*, 175 F.3d at 396. An adverse action is one that is " capable of deterring a person of ordinary firmness" from exercising the constitutional right in question. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir.2002).  Plaintiff does not have to show actual deterrence. *Harbin–Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir.2005). Even the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct. *Hill*, 630 F.3d at 472; *Thaddeus–X*, 175 F.3d at 398.  While this element is not an overly difficult one for a plaintiff to meet, *de minimis* threats or deprivations do not rise to the level of being constitutional violations.  *Id.*

Here, Plaintiff does not clearly state what he believes the adverse action to be.  He contends he had an appointment with Dr. Escobar a week after he filed a complaint with the state medical board.  He indicates he Dr. Escobar told him to continue with the stretching exercises.  Plaintiff reiterated that he believed he suffers from sciatica and told the doctor he experiences tingling when engaging in lengthy body movements or sitting for long periods of time.  He contends Dr. Escobar indicated not much could be done to eliminate the symptoms and that surgery would not fix the problem.  This appears to be a statement of medical opinion, not an adverse action.  It is also consistent with Dr. Escobar's medical opinion prior to the filing of the complaint with the medical board, and was likely the reason Plaintiff filed the complaint.  Plaintiff has not established the second element of his retaliation claim.

### 3. Causal Connection

The third element that Plaintiff must establish for his retaliation claim to survive dismissal is that the adverse action was motivated, at least in part, by his participation in protected conduct. *Siggers–El v. Barlow*, 412 F.3d 693, 699 (6th Cir.2005).  This element addresses whether the

7

Defendants' subjective motivation for taking the adverse action was at least in part to retaliate against the prisoner for engaging in protected conduct. *Thaddeus–X*, 175 F.3d at 399. If the prisoner can show that the Defendants' adverse actions were at least partially motivated by the prisoner's protected conduct, then the burden shifts to the Defendants to show that they would have taken the same action even absent such protected conduct. *Id*. at 399.

There is no reasonable connection between the Plaintiff's filing of the complaint with the medical board and Dr. Escobar's opinion that Plaintiff's condition will not be improved by surgery. As an initial matter, there are no allegations suggesting Dr. Escobar was aware on the date of the appointment that the complaint had been filed.  Moreover, the allegations in the pleading suggest that the opinion expressed by Dr. Escobar at the January, 2012, appointment is consistent with his opinion throughout the time period in question.  It is clear that Plaintiff disagrees with the diagnosis and the recommended course of treatment.  It appears that this opinion and course of treatment was the basis of Plaintiff's complaint to the medical board.  There is no indication that Dr. Escobar changed his opinion to retaliate against Plaintiff for filing a complaint.

B. Eighth Amendment

Plaintiff next asserts two claims for violation of the Eighth Amendment.  Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment.  A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred.  *Id.*  Seriousness is measured in response to "contemporary standards of decency."

8

*Hudson v. McMillian*, 503 U.S. 1,8 (1992). Routine discomforts of prison life do not suffice. *Id.* Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9. Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id.* Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id.* A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Plaintiff has two Eighth Amendment claims. First he contends he was denied adequate medical care. He also claims he was subjected to cruel and unusual punishment. The allegations in Plaintiff's Complaint fail to state a claim under either of these assertions.

While Plaintiff's medical conditions are arguably serious, he has not demonstrated that the Defendants were deliberately indifferent to his serious medical needs. Deliberate indifference "entails something more than mere negligence." *Id.* at 835. It is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). This standard is met if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

To this end, simple medical malpractice or mere dissatisfaction with a doctor's prescribed course of treatment is not actionable as an Eighth Amendment violation. Even erroneous treatment

implicates the Constitution only when the health care provider's conduct reflects a substantial departure from accepted medical judgment, practice, or standards.  *Id.*; *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir.1996).  An Eighth Amendment claim is not asserted "if a prisoner's complaint is directed at the wisdom or quality of the medical care he received in prison, even if that treatment is so negligent as to amount of medical malpractice." *Brinton v. Gaffney*, 554 F.Supp. 388, 389 (E.D.Pa.1983). *See also Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir.1992) (simple negligence or inadvertent failure to provide adequate medical care does not constitute the unnecessary and wanton infliction of pain).  Moreover, while a prisoner has a right to medical care, the right does not ensure that he will receive the type or scope of medical care which he personally desires. *See Hudson*, 503 U.S. at 9.  The Constitution does not guarantee a prisoner the treatment of his choice. *Ledoux*, 961 F.2d at 1537.  Where a physician provides constitutionally acceptable care, his or her inability to effect a final cure is not evidence of deliberate indifference.  *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir.1996); *Campos v. Srivastava*, No. 1:10–cv–641–LJO–MJS, 2012 WL 1067168, *3 (E.D.Cal. Mar. 28, 2012)("[A] doctor is not a warrantor of cures or required to guarantee results.").

Here, Plaintiff does not allege facts which reasonably suggest any of the Defendants were deliberately indifferent to his serious medical needs.  He has been seen regularly by medical staff at OSP.  He has been given multiple x-rays, and an MRI.  He was transported to Corrections Medical Center and was seen by specialists.  Although Dr. Escobar has reviewed the results of testing with Plaintiff, he does not agree with Dr. Escobar's diagnosis and continues to insist he has a pinched nerve and sciatica.  Plaintiff states several times that he is being denied medical treatment, but he does not specify the treatment he believes he should be receiving.  The substance

of Plaintiff's claims against Dr. Escobar appear to be that he disagrees with the diagnosis, and faults the doctor for failing to cure his symptoms. Even if Dr. Escobar has misdiagnosed Plaintiff's conditions, there are no facts in the Complaint which reasonably suggest the care he received was so grossly inadequate that it amounted to a substantial departure from accepted medical judgment, practice, or standards.

The Eighth Amendment claims against Lapushansky, Thornton, Parks and Thomas appear to be based on their responses to his grievances. Responding to a grievance or otherwise participating in the grievance procedure is insufficient to trigger liability under 42 U.S.C. § 1983. *Shehee v. Luttrell*, 199 F.3d. 295, 300 (6th Cir. 1999). The denial of the grievance is not the same as the denial of a request to receive medical care. *Martin v. Harvey*, No. 00-1439, 2001 WL 669983, at *2 (6th Cir. June 7, 2001).

Plaintiff also asserts a claim under the Eighth Amendment for subjecting him to cruel and unusual punishment. He does not clearly explain the basis for this claim, apart from his claim for deliberate indifference to his medical needs. He does allege that Nurse Belfast accused him of faking his back pain in order to obtain medication. As this is the only allegation which could arguably be this asserted as this type of Eighth Amendment claim, the Court will liberally construe it as an allegation of cruel and unusual punishment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes*, 452 U.S. at 346. The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir.1987) (per curiam) (quoting *Rhodes*, 452 U.S.

11

at 346). The deprivation alleged "must result in the denial of 'the minimal civilized measure of life's necessities.' " *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-601 (6th Cir.1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. Moreover, "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. Plaintiff claim that Nurse Belfast accused him of fabricating pain to obtain medication does not describe the type of extreme or barbarous conduct proscribed by the Eighth Amendment.

 C. <u>Fourteenth Amendment</u>

  Finally, Plaintiff concludes, without explanation, that the Defendants violated his Fourteenth Amendment rights. Principles requiring generous construction of *pro se* pleadings are not without limits. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985). A Complaint must contain either direct or inferential allegations respecting all the material elements of some viable legal theory to satisfy federal notice pleading requirements. *See Iqbal* , 129 S.Ct. at 1949; *Schied v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988). District courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments. *Beaudett*, 775 F.2d at 1278. To do so would "require ...[the courts] to explore exhaustively all potential claims of a *pro se* plaintiff, ... [and] would...transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Id.* at 1278. Moreover, Plaintiff's failure to identify a particular legal theory in his

complaint places an unfair burden on the Defendants to speculate on the potential claims that Plaintiff may be raising against them and the defenses they might assert in response to each of these possible causes of action. *See Wells v. Brown*, 891 F.2d at 594.  Even liberally construed, the Court cannot sufficiently decipher the nature of Plaintiff's claim for violation of the Fourteenth Amendment.

### III.    Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e).  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[5]

IT IS SO ORDERED.


Date: 6/28/12                              /s/ John R. Adams
                                      JOHN R. ADAMS
                                      UNITED STATES DISTRICT JUDGE

---

[5]    28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.

13